THE KNEAFSEY FIRM, INC.
SEAN M. KNEAFSEY (SBN 180863)
skneafsey@kneafseyfirm.com
KURT A. DREIBHOLZ (SBN 212779)
kdreibholz@kneafseyfirm.com
800 Wilshire Blvd., Suite 710
Los Angeles, California 90017
Phone: (213) 892-1200
Fax: (213) 892-1208

Attorneys for Defendant and Counter-claimant
THE KETCHUM GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON GAINER, an individual<br><br>Plaintiff,<br><br>vs.<br><br>THE KETCHUM GROUP, INC., d/b/a OUTDOOR TECHNOLOGY,<br><br>Defendant.<br><br>---<br><br>AND RELATED COUNTER-CLAIMS | Case No.: 8:17-CV-00672<br><br>[Hon. James V. Selna]<br><br>**DEFENDANT AND COUNTER-CLAIMANT THE KETCHUM GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        April 16, 2018<br>Time:        1:30 p.m.<br>Courtroom:  10C |

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................- 1 -

II.   STATEMENT OF FACTS ........................................................................- 2 -

   A.   Overview of Action ............................................................................- 2 -

   B.   The Ketchum Group...........................................................................- 3 -

   C.   Plaintiff's Bigfoot Statue is a Replica of the Patterson-Gimlin Bigfoot......- 3 -

   D.   Plaintiff Failed To Disclose To the Copyright Office That Plaintiff's Bigfoot
        Statue Was Derived From the Patterson-Gimlin Bigfoot..............................- 7 -

III.  DISCUSSION ...........................................................................................- 8 -

   A.   Summary Judgment Standard ............................................................- 8 -

   B.   Plaintiff's Bigfoot Statue Is a Derivative Work Because It Was Based On
        the Patterson Gimlin Bigfoot...........................................................- 9 -

   C.   Plaintiff Does Not Have a Valid Copyright Interest Because Plaintiff's
        Bigfoot Statue Is an Unlawful Derivative Work ..............................- 10 -

   D.   Gainer's Copyright Protection Does Not Extend To (And Ketchum
        Therefore Cannot Infringe) the Silhouette of Plaintiff's Bigfoot Statue ...- 11 -

      1.   The Infringement and Validity Issues In This Case Are Limited To the
           Silhouette of Plaintiff's Big Foot Statue and Not To Any Other Aspect of
           that Statue. ..............................................................................- 11 -

      2.   The Silhouette of Plaintiff's Bigfoot Statue Is Not Entitled To Any
           Presumption of Validity.  To the Contrary, Plaintiff Failed To Disclose To
           the Copyright Office That His Statue Was a Derivative Work. ...............- 12 -

      3.   The Silhouette of Plaintiff's Big Foot Statue Does Not Contain Sufficient
           Original Material to Qualify For Copyright Protection .............................- 14 -

         a.   Part One of the Durham Test:  The Silhouette of Plaintiff's Bigfoot
              Statue Is Not Sufficiently Original for Copyright Protection..............- 15 -

         b.   Part Two of the Durham Test:  Granting Plaintiff a Copyright in the
              Ketchum Bigfoot Silhouette Would Give Plaintiff a Monopoly on

i

Bigfoot.................................................................................- 24 -

IV.  CONCLUSION...................................................................- 25 -

1

**TABLE OF AUTHORITIES**

2

**Cases**

3  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) .......................... - 8 -, - 9 -

4  *Axxiom Mfg v. McCoy Invs.,* 846 F. Supp. 2d 732, 753 (S.D. Texas 2012)..............

5  ..................................................................................... - 12 -, - 16 -

6  *Batlin & Son, Inc. v. Snyder, supra*, 536 F.2d at 491 ........................................ - 16 -

7  *Blackthorne Publ'g Inc., v. Black,* 2000 U.S. App. LEXIS 1401, *6 (9th Cir. 2000)..

8  ..................................................................................... - 13 -

9  *Clayton v. Automated Gaming Techs, Inc.,* 2014 U.S. Dist. LEXIS 47003 at *11-12

10  (E.D. Cal. 2014) ...................................................................... - 10 -

11  *Durham Industries v. Tomy Corp.* 630 F.2d 905 (2nd Cir. 1980)............................

12  ..................................................................... - 15 -, - 17 -, - 22 -, - 25 -

13  *Earth Flag, Ltd. v. Alamo Flag Co.,* 153 F.Supp.2d 349 (S.D.N.Y. 2001) ......... - 16 -

14  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir.

15  1997).............- 9 -, - 13 -, - 14 -, - 15 -, - 16 -, - 17 -, - 21 -, - 23 -, - 24 -, - 25 -

16  *Ets-Hokin v. Skyy Spirits,* 225 F.3d 1068, 1078 (9th Cir. 2000) .......................... - 9 -

17  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991)...........................

18  ..................................................................... - 10 -, - 11 -, - 12 -, - 13 -

19  *Gallo v. Prudential Residential Servs. Ltd,* 22 F.3d 1219, 1223 (2nd Cir. 1994).......

20  ..................................................................................... - 8 -

21  *Gracen v. Bradford Exch. & MGM*, 698 F. 2d 300, 304 (7th Cir. 1983)...............

22  ..................................................................... - 15 -, - 16 -, - 19 -, - 20 -, - 23 -, - 24 -, - 25 -

23  *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2nd Cir. 1980)...........

24  ..................................................................................... - 15 -

25  *Kate Aspen, Inc., v. Faishioncraft-Excello, Inc.,* 370 F.Supp. 2d 1333, 1337 (N.D.

26  Ga 2005) .......................................................................... - 22 -

27  *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.

28  1976)............................. .........- 16 -, - 17 -, - 18 -, - 19 -, - 23 -, - 24 -, - 25 -

iii

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1147 (9th Cir. 2003)

....................................................................................................... - 16 -

*Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F.Supp.2d 1020, 1028 (C.D. Cal.

2007)................................................................................................... - 8 -

*Mattel, Inc., v. Robarb's, Inc.*, 139 F.Supp.2d 487, 497 (S.D.N.Y. 2001)........... - 10 -

*Moore Publ'g, Inc., v. Big Sky Mktg.,* 756 F. Supp. 1371 (D. Idaho 1990)......... - 16 -

*P&G v. Colgate-Palmolive Co.,* 1998 U.S. Dist. LEXIS 17773 at *111-112

(S.D.N.Y. 1998) ....................................................................... - 18 -, - 25 -

*Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 938 (N.D. Cal. 1992) ......... - 10 -

*Past Pluto Prods. Corp. v. Dana,* 627 F. Supp. at 1442 (S.D.N.Y.

1986)................................................................................- 17 - , - 21 -, - 25 -

*Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000) ................................................ - 11 -

*Russ Berrie & Co. v. Elsner,* 482 F. Supp. 980, 988 (S.D.N.Y. 1980 ................ - 14 -

*S.T.R Indus., Inc. v. Palmer Indus., Inc.,* 1999 U.S. Dist. LEXIS 6300 (N.D. Ill.

1999)................................................................................................. - 16 -

*Sapon v. DC Comics,* 2002 U.S. Dist. LEXIS 5395 (S.D.N.Y. 2002)………………..

.................................................................. - 20 -, - 21 -, - 23 -, - 25 -

*Towle Mfg. Co., v. Godinger Silver Art Co.,* 612 F. Supp. 986, 992 (S.D.N.Y. 1985).

.................................................................................................... - 22 -

*U.S. Auto Parts Network, Inc. v. Parts Geek, Ltd. Liab. Co.*, 692 F.3d 1009, 1016

(9th Cir. 2012) ...................................................................... - 10 -, - 11 -

**Statutes**

17 U.S.C. § 101............................................................................................. - 9 -

17 U.S.C. § 103(a) ...................................................................................... - 10 -

17 U.S.C. § 103(b) .............................................................................. - 12 -, - 15 -

17 U.S.C. § 409........................................................................... - 13 -, - 14 -

17 U.S.C. § 410(c) ...................................................................................... - 13 -

Fed. R. Civ. P. 56(a) ...................................................................................... - 8 -

DEFENDANT AND COUNTER-CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES

**Other Authorities**

1 M. Nimmer, The Law of Copyright, § 20.2, at 94 (1975)...................... - 14 -, - 17 -

1 Nimmer on Copyright § 3.06 (1983) ................................................. - 10 -

## I.    INTRODUCTION

In 1967, Roger Patterson and Robert Gimlin purportedly filmed the famous "Bigfoot" in Humboldt County California ("Patterson Gimlin Bigfoot").  The iconic "Frame 352" from this film is depicted below:



In 2006, Plaintiff made a statue of Bigfoot from this frame which he displayed in a park ("Plaintiff's Bigfoot Statue").  *See infra* part II.C.  He wrote: "I would like to recreate a life sized version of bigfoot in this pose. . . . I would like to construct a realistic version of this infamous film still." (Ex. 4).

Ketchum is an outdoor products company that employs approximately 14 people.  For the last eight years, Ketchum has used a silhouette of Bigfoot as part of its logo ("The Ketchum Bigfoot Silhouette") which is depicted below:



Plaintiff claims that The Ketchum Bigfoot Silhouette infringes Plaintiff's copyright in Plaintiff's Bigfoot Statue.  Because Ketchum only utilizes a silhouette of Bigfoot, the copyright validity issues in this case are limited to whether Plaintiff can have a copyright interest in a silhouette of Bigfoot.  *See infra* part III.D.1.  For the following reasons, Plaintiff cannot, and summary judgment should be granted as a matter of law.

- 1 -

First, Plaintiff's Big Foot Statue is an unlawful derivative work because Plaintiff copied the Patterson-Gimlin Bigfoot without obtaining permission from the owners of the copyright to that film.  *See infra* part III.C.

Second, even if Plaintiff's Bigfoot Statue was not an unlawful derivative work, any copyright interest he has in the statue does not extend to the silhouette because the silhouette does not contain sufficient original material.  *See infra* part III.D.3.a.  Further, to grant Plaintiff a copyright in the silhouette would give him a monopoly over the "infamous Patterson-Gimlin Bigfoot" from which Plaintiff's own statue was copied.  *See infra* part III.D.3.b.

## II.   STATEMENT OF FACTS

### A.   Overview of Action

Plaintiff's Complaint is based on a Bigfoot statue he created in 2006 as well as a photograph of the same statue (collectively "Plaintiff's Bigfoot Statue"). (Complaint, ¶ 10; Exs. 10-11).  Plaintiff contends that the silhouette of Bigfoot contained within Defendant The Ketchum Group, Inc.'s logo ("Ketchum Bigfoot Silhouette") infringes on Plaintiff's copyright interest in Plaintiff's Bigfoot Statue. (Complaint, ¶¶ 17-18; Kneafsey Decl., ¶ 2; Gugliuzza, ¶ 2).  The following is the accused Ketchum Bigfoot Silhouette:



(Complaint, ¶¶ 17-18; Kneafsey Decl., ¶ 2; Gugliuzza, ¶ 2).

As a result, in this action Plaintiff's assertion of a copyright interest is limited to the silhouette of Plaintiff's Bigfoot Statue because the only accused work is the Ketchum Bigfoot Silhouette.  (Complaint, ¶¶ 17-18).

- 2 -

Plaintiff contends that the "original expressive elements" contained in the silhouette of Plaintiff's Bigfoot Statue (and therefore the Ketchum Bigfoot Silhouette) are Bigfoot's body posture, position of limbs, head angle, hair length and texture, and facial details.  (Ex. 1 at Response 8; Complaint, ¶¶ 17-18).

### B.   The Ketchum Group

The Ketchum Group is an outdoor products company that employs approximately 14 people.  The current owner of the Ketchum Group purchased a minority interest in the company in 2012 and the reminder in 2016.  When the current owner first acquired his interest in the company, the accused silhouette was already part of The Ketchum Group's logo.  The silhouette was first used in approximately 2009-2010.  (Gugliuzza, ¶ 2)

Notwithstanding the fact that The Ketchum Group has been using the silhouette since 2009-2010, Plaintiff did not notify The Ketchum Group of its claim for infringement until 2016.  (Gugliuzza, ¶ 2).  In addition, he did not apply for a copyright registration until 2016 which was 10 years after he created his statue. (Exs. 10-11).

### C.   Plaintiff's Bigfoot Statue is a Replica of the Patterson-Gimlin Bigfoot

Plaintiff's Bigfoot Statue was based on a famous "Frame 352" from a film taken by Roger Patterson and Robert Gimlin where they purportedly filmed Bigfoot in Humboldt County California ("Patterson Gimlin Bigfoot").  (Kneafsey Decl., ¶ 7; Ex. 5 at p. 99 (GAINER0000304); Ex. 4 at p. 85; Complaint, ¶¶ 16-17; Ex. 2[1] at 75:25-83:1, 91:7-94:24, 96:15-100:22, 102:22-106:1, 107:4-20, 109:24-110:2, 151:16-20; 159:14-19; 172:8-15, 286:6-16; Ex. 1 at Response 1).  The Patterson Gimlin Bigfoot is depicted below:

---

[1] Exhibit 2 is Plaintiff's deposition transcript.  For purposes of citing to the deposition transcript in this motion, Defendant used deposition transcript page numbers rather than the page numbers assigned for purposes of marking the exhibit.



*Id.*

Plaintiff's notes in preparation for his creation of the Plaintiff Bigfoot Statue state:

> One of the most well-known amateur films that has burned still frames into our collective historic memories was recorded in October 1976 [sic] by Roger Patterson.  The film captured the only known footage of the mythic creature called Bigfoot.  Although there are almost 40 seconds of footage, only a single frame of the film has been used to identify the famed creature in countless articles & films. This image, seemingly linking the human and animal species, shows the creature staring back at the camera while walking towards the woods.  This pose has become an iconic one.  <u>For the exhibition, I would like to recreate a life sized version of bigfoot in this pose. . . . I would like to construct a realistic version of this infamous film still.</u>

(Ex. 4 at pp. 84; Ex. 2 at 75:25 –83:1, 98:16-99:22).  (emphasis added).

As part of his proposal to construct the Plaintiff Bigfoot Statue, Gainer superimposed the Patterson-Gimlin Bigfoot onto a picture of the park where Plaintiff's Bigfoot Statue would be located.  (Ex. 4 at p. 85; Ex. 2 at pp 75:25 –83:1, 98:16-99:22; 102:12 – 107:10).  His notes regarding this proposal state: "I have included a rendering of the proposed work situated in the wooded area."  (Ex. 4, p. 84-85).  The following is the photograph:

- 4 -



(Ex. 4 at p. 2; Ex. 2 at pp 75:25 –83:1; 98:16-99:22; 102:22 – 107:20).

The Patterson-Gimlin Film is registered with the United States Copyright Office (Registration Number PA000017582 and Renewal Registration RE0000718448) ("Patterson Gimlin Copyright").  (Ex. 3; Kneafsey Decl., ¶ 5; Request for Judicial Notice).

Gainer did not seek or receive permission from the owners of the Patterson-Gimlin Copyright to create the Plaintiff Bigfoot Statue.  (Ex. 1 at Response No. 6).

Plaintiff also used the following drawing as part of his reference material in his creation of Plaintiff's Bigfoot Statue ("Prior Art Bigfoot Drawing").

(Ex. 5 at p. 93; Ex. 1 at Response No. 1).

During this litigation alone, there have been at least 80 products on sale on Amazon.com that depict Bigfoot in the pose as is reflected in the Patterson Gimlin Film.  (Ex. 8; Kneafsey Decl., ¶ 10).

Plaintiff's Bigfoot Statue, the Patterson-Gimlin Bigfoot, Plaintiff's use of the Patterson Gimlin Bigfoot in his project proposal, and the Ketchum Bigfoot Statue are depicted below:

DEFENDANT AND COUNTER-CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES

| Plaintiff's Bigfoot Statue (Complaint at 4) | Patterson Gimlin Bigfoot (Kneafsey Decl., ¶ 7) | Plaintiff's Use of Patterson Gimlin Bigfoot In Project Proposal (Ex. 4, p. 85 | Accused Ketchum Bigfoot Silhouette (Complaint, p. 7; Kneafsey Decl., ¶ 7 |
|---|---|---|---|
|  |  |  |  |

(Ex. 9).

The Patterson-Gimlin Bigfoot, Plaintiff's Bigfoot Statue, and The Ketchum Bigfoot Silhouette contain the following common features:

- Bigfoot caught in mid-stride
- Bigfoot walking from left to right.
- Bigfoot with the left arm forward and the right arm back.
- Bigfoot with the right leg forward and the left leg back.
- Bigfoot looking to the right over its right shoulder
- Bigfoot looking from the side as opposed to head on.
- Bigfoot leaning slightly forward.
- Bigfoot looking back at the camera
- Bigfoot depicted from the same angle.
- Bigfoot covered in hair.
- Bigfoot with a large, hairy head.
- Bigfoot with a large right thigh.
- Bigfoot with a large right shoulder.

DEFENDANT AND COUNTER-CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES

1  (Ex. 9; Kneafsey Decl., ¶ 7; Ex. 5 at p. 99 (GAINER0000304); Ex. 4 at p. 85;

2  Complaint, ¶¶ 16-17; Ex. 2 at 75:25-83:1, 91:7-94:24, 96:15-100:22, 102:22-106:1,

3  107:4-20, 109:24-110:2, 151:16-20; 159:14-19; 172:8-15, 286:6-16; Ex. 1 at

4  Response 1).

5      As part of Plaintiff's creation of Bigfoot, he highlighted material printed from

6  the internet stating that Bigfoot was 7 feet tall.  (Ex. 5 at p. 99 (GAINER0000304)

7  (highlighting in original); Ex. 2 at 108:15-25; 115:1-116:7).  As a result, Plaintiff

8  made his Bigfoot Statue seven feet tall.  (Ex. 2 at 112:16-18, 115:1-116:7).

9      **D.      Plaintiff Failed To Disclose To the Copyright Office That**

10         **Plaintiff's Bigfoot Statue Was Derived From the Patterson-Gimlin**

11         **Bigfoot**

12     Plaintiff, through his attorney Christopher Larus, submitted Plaintiff's Bigfoot

13 Statue and photograph for registration to the United States Copyright Office in

14 October of 2016, using Copyright Office Form VA. (Complaint at ¶ 12 & Ex. A; Ex.

15 2 at 180:6-185:20, Exs. 10-11)  Plaintiff's application for registration did not occur

16 until 10 years after Plaintiff first published Plaintiff's Bigfoot Statue.  Ex. 9 at p; 3;

17 Ex. 10 at p. 3.

18     The Instructions to Form VA state:

19         **SPACE 6: Derivative Work or Compilation**

20         **General Instructions:** Complete space 6 if this work is a . . .

21         "derivative work," and if it incorporates one or more earlier

22         works that have already been published or registered for

23         copyright, or that have fallen into the public domain. . . .

24         A "derivative work" is "a work based on one or more

25         preexisting works."  . . . .

26         **Preexisting Material (space 6a):** Complete this space and

27         space 6b for derivative works. In this space identify the

28

- 7 -

preexisting work that has been recast, transformed, or adapted. . . . .

**Material Added to This Work (space 6b):** Give a brief, general statement of the additional new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material.

(Ex. 10 p. 231; Ex. 11, p. 241).  Plaintiff read and certified both applications.  (Ex. 10 at p. 229; Ex. 11 at p. 239; Ex. 2 at 180:6-185:20).  Plaintiff did not disclose to the Copyright Office that his Bigfoot Statue was based on the Patterson Gimlin Bigfoot. (Ex. 10 at p. 233 § 6; Ex. 11 at p. 243 § 6)  Plaintiff did not disclose to the Copyright Office any new material he added to the Patterson Gimlin film. (Ex. 10 at p. 233 § 6; Ex. 11 at p. 243 § 6).

## III.   DISCUSSION

### A.   Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  However, where it is apparent no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight," summary judgment should be granted. *Gallo v. Prudential Residential Servs. Ltd,* 22 F.3d 1219, 1223 (2nd Cir. 1994); *see also Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F.Supp.2d 1020, 1028 (C.D. Cal. 2007)

("Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue."). "The mere existence of a scintilla of evidence in support of the (non-movant's) position will be insufficient." *Anderson,* 477 U.S. at 252.  Instead, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor.  *Anderson,* 477 U.S. at 256.

**B.**  **Plaintiff's Bigfoot Statue Is a Derivative Work Because It Was Based On the Patterson Gimlin Bigfoot**

As a preliminary matter, Plaintiff's Bigfoot Statue is a "derivative work" under the Copyright Act because it was "based upon" the Patterson Gimlin Bigfoot. "The Copyright Act defines a 'derivative work' as 'a work based upon one or more preexisting works.'" *Ets-Hokin v. Skyy Spirits,* 225 F.3d 1068, 1078 (9th Cir. 2000); 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works"); *see Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1219 (9th Cir. 1997) ("ERG's costumes were based on preexisting works that were copyrighted and owned by the ultimate purchasers.").

Here, Plaintiff Bigfoot Statue was "based upon" the Patterson Gimlin Bigfoot. *See supra* part II.C.  Among other things, Plaintiff's notes state: "I would like to recreate a life sized version of bigfoot in this pose. . . . I would like to construct a realistic version of this infamous [Patterson-Gimlin] film still."  (Ex. 4 at p. 84).  His project proposal even included the Patterson-Gimlin Bigfoot in the location where he intended to place his Bigfoot statue.  (Ex. 4 at p. 85).  In addition, Plaintiff's Bigfoot Statue and the Patterson-Gimlin Bigfoot contain all of the same features. *See supra* part II.C

The fact that Plaintiff's Bigfoot is a derivative work gives rise to the defenses discussed below.

**C.** **Plaintiff Does Not Have a Valid Copyright Interest Because Plaintiff's Bigfoot Statue Is an Unlawful Derivative Work**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991).

In order to establish a "valid copyright" in a "derivative work," the author of the "derivative work" must have obtained permission from any copyright owner in the preexisting work to create the derivative work.  Otherwise, any copyright in the derivative work is invalid.  "[I]f a third party uses preexisting work in violation of the Copyright Act, the resulting derivative work is not entitled to copyright protection."  *U.S. Auto Parts Network, Inc. v. Parts Geek, Ltd. Liab. Co.*, 692 F.3d 1009, 1016 (9th Cir. 2012) (internal citations omitted); 17 U.S.C. § 103(a) ("protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully"); *Clayton v. Automated Gaming Techs, Inc.,* 2014 U.S. Dist. LEXIS 47003 at *11-12 (E.D. Cal. 2014) ("protection for a work employing preexisting material in which copyright subsists does not  extend to any part of the work in which such material has been used unlawfully. Therefore, regardless of whether AGT may be considered the 'author' or owner of the CBMS and Biometric software, it does not own or have rights in the Admin App ('the preexisting material in which copyright subsists') if that material was used unlawfully.") (internal quotations omitted); *Mattel, Inc., v. Robarb's, Inc.*, 139 F.Supp.2d 487, 497 (S.D.N.Y. 2001) "[T]he consent of the copyright owner of the pre-existing work is necessary in order to render the derivative or collective work non-infringing.") (quoting 1 Nimmer on Copyright § 3.06 (1983)); *Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 938 (N.D. Cal. 1992) ("If the preexisting copyrighted material used without permission tends to pervade the entire derivative work, copyright protection is denied to the derivative work entirely.").

DEFENDANT AND COUNTER-CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES

For example, in *Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000), a fan made a guitar in the shape of the symbol that serves as the name for the musician/artist Prince.  Prince had a copyright on the preexisting work.  Therefore, the court held that the plaintiff could not copyright the derivative work without permission from Prince.  The Court stated that:  "The Copyright Act grants the owner of a copyright the exclusive right to prepare derivative works." *Pickett,* 207 F.3d at 405-06.  At the district court level, the court observed that the underlying work "pervaded" the derivative work, and held that the latter could not sustain independent copyright protection. *Pickett v. Prince*, 52 F. Supp. 2d 893, 906, 908 (N.D. Ill. 1999).

Here, the Patterson Gimlin Bigfoot is registered with the United States Copyright Office (Registration Number PA000017582 and Renewal Registration RE0000718448) ("Patterson Gimlin Copyright").  (Ex. 3).  Plaintiff admits that he did not seek or receive permission from the owners of the Patterson-Gimlin Copyright to create Plaintiff's Bigfoot Statue.  (Ex. 1 at Response No. 6).

As a result, Plaintiff used the Patterson Gimlin Bigfoot unlawfully and is therefore "the resulting derivative work is not entitled to copyright protection." *U.S. Auto Parts Network, Inc.*, 692 F.3d at 1016.

**D.     Gainer's Copyright Protection Does Not Extend To (And Ketchum Therefore Cannot Infringe) the Silhouette of Plaintiff's Bigfoot Statue**

**1.     The Infringement and Validity Issues In This Case Are Limited To the Silhouette of Plaintiff's Big Foot Statue and Not To Any Other Aspect of that Statue.**

Plaintiff only accuses Ketchum of copying the silhouette of Plaintiff's Bigfoot Statue, as opposed any other element of the statue.  (Complaint, ¶¶ 17-18).

As a result, the only issue in this case is whether Plaintiff's copyright interest (if any) extends to the silhouette of Plaintiff's Bigfoot Statue. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement,

- 11 -

1   two elements must be proven: (1) ownership of a valid copyright, and (2) <u>copying of</u>

2   <u>constituent elements of the work that are original.</u>") (emphasis added.)

3        For example, in *Axxiom Mfg v. McCoy Invs.,* 846 F. Supp. 2d 732, 753 (S.D.

4   Texas 2012), the plaintiff obtained a copyright registration on an entire product

5   manual but only accused the defendant of copying certain drawings in the manual.

6   *Id.*  In concluding that the drawings were not sufficiently original, the court

7   explained:

8           To the extent that Axxiom owns valid copyrights in the 1997,

9           2004, and 2008 manuals, that protection does not extend to

10          those drawings.  *See* 17 U.S.C. § 103(b); *Schrock*, 586 F.3d at

11          521. And because Axxiom's copyright-infringement claims rest

12          on copyright protection extending to these drawings, Axxiom's

13          claims must fail. Forecast is entitled to partial summary

14          judgment on the copyright-infringement claims.

15  *Axxiom Mfg.,* 846 F. Supp. 2d at 753.  Stated another way:

16          The mere fact that a work is copyrighted does not mean that

17          every element of the work may be protected.  Originality

18          remains the *sine qua non* of copyright; accordingly, copyright

19          protection may extend only to those components of a work that

20          are original to the author.

21  *Feist Publ'ns, Inc.,* 499 U.S. at 348.

22          **2.      The Silhouette of Plaintiff's Bigfoot Statue Is Not Entitled To**

23                  **Any Presumption of Validity.  To the Contrary, Plaintiff**

24                  **Failed To Disclose To the Copyright Office That His Statue**

25                  **Was a Derivative Work.**

26          As set forth above, "[t]o establish infringement, two elements must be proven:

27  (1) ownership of a valid copyright, and (2) copying of constituent elements of the

28  work that are original."  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S.

- 12 -

1  340, 361 (1991); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122

2  F.3d 1211, 1217, 1220 (9th Cir. 1997).

3          As a preliminary matter, Plaintiff is not entitled to any presumption of validity

4  by virtue of having submitted an application for registration to the United States

5  Copyright Office because he failed to do so within 5 years of the date of the first

6  publication of Plaintiff's Bigfoot Statue.[2]  17 U.S.C. § 410(c).  Here, Plaintiff first

7  published the Plaintiff's Bigfoot Statue in 2006 but did not submit his registration

8  applications until over 10 years later in 2016.  (Exs. 10 at p. 229; Ex. 11 at p. 239).

9          Furthermore, here, Plaintiff failed to disclose that his work was derivative of

10  the Patterson Gimlin Bigfoot, as he was required to pursuant to 17 U.S.C. § 409.

11  The section states:

12              The application for copyright registration . . . shall include . . .

13              in the case of a . . . derivative work, *an identification of any*

14              *preexisting work or works* that it is based on or incorporates,

15              and a brief, general statement of the *additional material*

16              *covered by the copyright claim* being registered.

17  17 U.S.C. § 409 (emphasis added).  Indeed, the Instructions for Section 6 of Form

18  VA specifically state: "A 'derivative work' is 'a work based on one or more

19  preexisting works.'  Examples of derivative works include *reproductions of works of*

20  *art, sculptures based on drawings . . .*" (Ex. 10 p. 231; Ex. 11, p. 241).

21          Moreover, in failing to disclose the Patterson Gimlin Bigfoot as a derivative

22  work, Plaintiff also did not disclose "the additional material covered by the

23  ─────────────────

24  [2] 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or <u>within five years after first publication of the work</u> shall constitute

25  prima facie evidence of the validity of the copyright and of the facts stated in the certificate.") (emphasis added); *Blackthorne Publ'g Inc., v. Black,* 2000 U.S. App.

26  LEXIS 1401, *6 (9th Cir. 2000) ("Plaintiffs do not validly own the copyright simply because they registered with the United States Copyright Office, because the

27  registration occurred more than five years after the first publication.")

28

copyright claim being registered." 17 U.S.C. § 409.  The Copyright Office Form VA requires that the copyright provide a "general state of the *additional* new material covered by the copyright claim for which registration is sought.  <u>In the case of a derivative work, identify this new material</u>."  (Ex. 10 at p. 233 § 6; Ex. 11 at p. 243 § 6.) (emphasis added).

Plaintiff's nondisclosure had to be intentional because, for the reasons discussed below, Plaintiff knew that if he disclosed that the Plaintiff Big Foot Statue was derivative of the Patterson Gimlin Bigfoot, he would have had to claim a copyright interest in the silhouette of his statue which the copyright office would have rejected. *Russ Berrie & Co. v. Elsner,* 482 F. Supp. 980, 988 (S.D.N.Y. 1980 ("Here, however, the Copyright Office had no opportunity to pass on plaintiff's claim accurately presented.  The knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration *invalid and thus incapable of supporting an infringement action*, 1 Nimmer § 94, or denying enforcement on the ground of unclean hands." (emphasis added)).  In addition, he registered his works only in anticipation of this litigation in 2016 and with the assistance of his current attorneys.  (Complaint at ¶ 12 & Ex. A; Ex. 2 at 180:6-185:20, 188:6-11; Exs. 10-11).

### 3.   The Silhouette of Plaintiff's Big Foot Statue Does Not Contain Sufficient Original Material to Qualify For Copyright Protection

In *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1220 (9th Cir. 1997), the Ninth Circuit adopted the Second Circuit's two-part test (the "Durham Test") for determining whether a derivative work is entitled to protection under the Copyright Act.  The test is as follows:

> **First,** to support a copyright the original aspects of a derivative work must be more than trivial. **Second,** the original aspects of a derivative work must reflect the degree to which it relies on

- 14 -

1    preexisting material and must not in any way affect the scope of

2    any copyright protection in that preexisting material.

3  *Entm't Research Grp.*, 122 F.3d at 1220 (emphasis added) (quoting *Durham*

4  *Industries v. Tomy Corp.* 630 F.2d 905 (2nd Cir. 1980).

5         a.    <u>**Part One of the Durham Test**</u>:  **The Silhouette of**

6               **Plaintiff's Bigfoot Statue Is Not Sufficiently Original**

7               **for Copyright Protection**

8    Copyright protection in a derivative work extends only to new and original

9  material contributed by the author and not to anything in the preexisting material

10 upon which it is based.  The Copyright Act states:

11          The copyright in a . . . derivative work extends only to

12          the material contributed by the author of such work, as

13          distinguished from the preexisting material employed in

14          the work, and does not imply any exclusive right in the

15          preexisting material.

16 17 U.S.C. § 103(b);

17    The determination of whether a derivative work contains sufficiently new

18 material to support a copyright is an issue that may be resolved on summary

19 judgment.  *Durham* 630 F. 2d at 915 (2nd Cir. 1980) ("Where the similarity

20 demonstrated pertains solely to noncopyrightable material, summary judgment is

21 appropriate" ) (quoting *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977

22 (2nd Cir. 1980).

23    In fact, courts have regularly granted summary judgment finding a copyright

24 invalid in a derivative works because the work was not sufficiently different from

25 the preexisting work upon which it was based.[3]

26  _____

27 [3] *Gracen v. Bradford Exch. & MGM*, 698 F. 2d 300, 304 (7th Cir. 1983) ("But especially as applied to derivative works, the concept of originality in copyright law

28 has as one would expect a legal rather than aesthetic function -- to prevent

*[footnote continued on next page]*

DEFENDANT AND COUNTER-CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES

1    The seminal case on derivative works is *L. Batlin & Son, Inc. v. Snyder*, 536

2    F.2d 486 (2d Cir. 1976) (en banc), *cert denied* 429 U.S. 857 (1976).  In *L. Batlin*,

3    the Second Circuit Court of Appeal, sitting *en banc,* explained that "to support a

4    copyright [in a derivative work] there must be at least some substantial variation and

5    not a trivial variation . . . ."  *L. Batlin*, 536 F. 2d at 491.

6    The Seventh Circuit later explained in *Gracen v. Bradford Exch. & MGM,*

7    698 F. 2d 300, 305 (7th Cir. 1983) as follows:

8    [A] derivative work must be substantially different from the

9    underlying work to be copyrightable. This is the test of *L.*

10   *Batlin & Son, Inc. v. Snyder, supra*, 536 F.2d at 491, a decision

11   of the Second Circuit – "the nation's premier copyright court --

12   sitting en banc.

13   *Gracen,* 698 F. 2d at 305.  The *Gracen* court further explained:

14

15

---

16   overlapping claims."); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
     122 F.3d 1211, 1224 (9th Cir. 1997) (upholding grant of summary judgment of
17   copyright invalidity because derivative work (costumes) lacked sufficient
18   originality); *Axxiom Mfg v. McCoy Invs.,* 846 F. Supp. 2d 732, 753 (S.D. Texas
     2012) (granting summary judgment of copyright invalidity because derivative work
19   (tool drawings) lacked sufficient originality); *Earth Flag, Ltd. v. Alamo Flag Co.,*
     153 F.Supp.2d 349 (S.D.N.Y. 2001) (granting summary judgment of copyright
20   invalidity because derivative work (earth flag) lacked sufficient originality); *S.T.R*
21   *Indus., Inc. v. Palmer Indus., Inc.,* 1999 U.S. Dist. LEXIS 6300 (N.D. Ill. 1999)
     (granting summary judgment of copyright invalidity because derivative work
22   (drawings on pool cues) lacked sufficient originality); *Moore Publ'g, Inc., v. Big Sky*
23   *Mktg.,* 756 F. Supp. 1371 (D. Idaho 1990)  (granting summary judgment of
     copyright invalidity because derivative work (the firm's logos) lacked sufficient
24   originality); *see also Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d
25   1140, 1147 (9th Cir. 2003) (granting summary judgment on the grounds that "Lamps
     Plus's mechanical combination of four preexisting ceiling-lamp elements with a
26   preexisting table-lamp base did not result in the expression of an original work of
27   authorship as required by § 101.").

28

- 16 -

> The requirement of originality is significant chiefly in connection with derivative works, where if interpreted too liberally it would paradoxically inhibit rather than promote the creation of such works by giving the first creator a considerable power to interfere with the creation of subsequent derivative works from the same underlying work.

*Gracen,* 698 F. 2d at 305 ("the purpose of the term ["original"] in copyright law is not to guide aesthetic judgments but to assure a sufficiently gross difference between the underlying and the derivative work to avoid entangling subsequent artists depicting the underlying work in copyright problems."); *see also Durham,* 630 F. 2d at 911 ("it is clear that the originality requirement imposed by the Constitution and the Copyright Act has particular significance in the case of derivative works based on copyrighted preexisting works").

Notably, "making decisions that enable one to reproduce or transform an already existing work into another medium or dimension - though perhaps quite difficult and intricate decisions - is not enough to constitute the contribution of something recognizably his own."[4]  *Entm't Research Grp*, 122 F.3d at 1222.  To do so would lead to "the ludicrous result that the first person to execute a public domain work of art in a different medium thereafter obtains a monopoly on such work in such medium, at least as to those persons aware of the first such effort."  *L. Batlin,* 536 F.2d at 491 (quoting 1 M. Nimmer, The Law of Copyright, § 20.2, at 94 (1975)).

---

[4] *Durham,* 630 F. 2d at 910 ("the originality requirement of copyrightability can be satisfied by the mere reproduction of a work of art in a different medium"); *Past Pluto Prods. Corp.,* 627 F.Supp. at 1441 ("a copyright claimant's production of a work of art in a different medium cannot by itself constitute the originality required for copyright protection.").

The case law is replete with examples of courts rejecting copyright validity in derivative works. *P&G v. Colgate-Palmolive Co.,* 1998 U.S. Dist. LEXIS 17773 at *111-112 (S.D.N.Y. 1998) ("Courts have consistently rejected attempts to gain copyright protection for allegedly derivative works that are based on trivial changes to preexisting materials, regardless of whether the preexisting materials are in the public domain or protected by copyright.")

For example, in *L. Batlin,* the plaintiff had obtained a copyright registration on a plastic "Uncle Sam Bank." *Id.* at 488. In ruling that the plaintiff's copyright was invalid, the court observed that "Uncle Sam mechanical banks have been on the American scene since June 8, 1886, when Design Patent No. 16,728, issued on a toy savings bank of its type." *Id.* at 488. This design patent and the Uncle Sam bank at issue (which Defendant's counsel obtained for illustration purposes) are set forth below:

 

| Prior Art Design Patent No. 16,728 (Ex. 11; Kneafsey Decl., ¶ 14) | *L. Batlin* Uncle Sam Bank (Ex. 12, Kneafsey Decl, ¶ 14) |
|---|---|

In *L. Batlin*, the plaintiff claimed that there were many differences between its "Uncle Sam Bank" and the prior "Uncle Sam Banks" such as the bank reflected in Design Patent No. 16,728. *L. Batlin,* 536 F. 2d at 489. The plaintiff argued that "the carpetbag shape of the plastic bank is smooth, the iron bank rough; the metal bank bag is fatter at its base; the eagle on the front of the platform in the metal bank is

- 18 -

holding arrows." *L. Batlin,* 536 F. 2d at 489.  In addition, the plaintiff argued that "the shape of Uncle Sam's face is supposedly different, as is the shape and texture of the hats . . . In the metal version the umbrella is hanging loose while in the plastic item it is included in the single mold. The texture of the clothing, the hairline, shape of the bow ties and of the shirt collar and left arm as well as the flag carrying the name on the base of the Statue are all claimed to be different, along with the shape and texture of the eagles on the side." *L. Batlin,* 536 F. 2d at 489.

The court noted these differences and stated that "concededly, the plastic version is not, and was scarcely meticulously produced to be, an exact faithful reproduction." *L. Batlin,* 536 F. 2d at 492.  However, the court held that the differences were not sufficiently original to obtain copyright protection.  Notably, as here, the court concluded that to grant copyright protection on this Uncle Sam Bank would be to give the plaintiff a monopoly:

> Absent a genuine difference between the underlying work of art and the copy of it for which protection is sought, the public interest in promoting progress in the arts -- indeed, the constitutional demand*, Chamberlin v. Uris Sales Corp., supra* -- could hardly be served. To extend copyrightability to minuscule variations would simply put a weapon for harassment in the hands of mischievous copiers intent on appropriating and monopolizing public domain work.

*L. Batlin,* 536 F. 2d at 492.

Similarly, in *Gracen v. Bradford Exch. & MGM,* 698 F. 2d 300, 301-302 (7th Cir. 1983), the plaintiff painted a picture of Dorothy from the Wizard of Oz (which she had an implied license to do).  *Id.* at 301-302.  The images, taken from the case itself, are depicted below:

1
2
3
4
5
6
7
8
9
10

 

| *Gracen* Plaintiff's Painting | Dorothy from Wizard of Oz |
|---|---|
| *Gracen,* 698 F.2d at 306 [Figure 1] | *Gracen,* 698 F.2d at 306 [Figure 2] |

11
12
13
14

Because of the similarity between the Plaintiff's painting and the original Dorothy from the Wizard of Oz, the court held that "whatever its artistic merit, it is not an original derivative work within the meaning of the Copyright Act. *Gracen,* 698 F.2d at 305.

15
16
17
18
19

In *Sapon v. DC Comics,* 2002 U.S. Dist. LEXIS 5395 (S.D.N.Y. 2002), the court granted summary judgment of invalidity finding that following drawing of batman was not copyrightable because all of the features of the plaintiff's batman drawing were found in prior versions of batman:

20
21
22
23
24
25
26



27
28

*Sapon,* 2002 U.S. Dist. LEXIS 5395 at Appx. 1.  The court stated:

1    Viewing the Black Bat as a whole, no reasonable jury could

2    find that it satisfies the requirements of originality. Sapon

3    created a derivative of DC Comics' Batman, copying, in

4    addition to the overall appearance, the most qualitatively

5    important separate elements of DC Comics' work: the wings,

6    the horns, the emblem, and the utility belt.

7    *Sapon,* 2002 U.S. Dist. LEXIS 5395 at *28.

8         In *Past Pluto Prods. Corp. v. Dana,* 627 F. Supp. at 1442 (S.D.N.Y. 1986),

9    the court found that a hat that was "inspired by and derived from the crown of the

10   Statue of Liberty" lacked "sufficient originality to be the subject of a valid

11   copyright.  *Id.* at 1437, 1443.  In fact, in *Past Pluto Prods. Corp.,* the court

12   specifically rejected the plaintiff's attempt to obtain copyright protection in the

13   silhouette of its hat, ruling as follows:

14   Past Pluto's argument that its hat is copyrightable is ultimately

15   reduced to the basic contention that the hat's silhouette window

16   design is sufficiently original to afford plaintiff's hat at least

17   some measure of copyright protection. For the reasons set forth

18   below, however, this Court declines to find that this design or

19   any of the hat's other features amount to substantial non-trivial

20   originality deserving of protection under the federal copyright

21   laws.

22   *Past Pluto Prods. Corp,*  627 F. Supp. At 1442.

23        In *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211,

24   (9th Cir. 1997), the plaintiff claimed to have a copyright interest in costumes that

25   were based on famous cartoon characters.  *Id.* at 1214, 1218.  The court held that

26   although there were some artistic differences between the costumes and the

27   underlying works upon which they were based, "no reasonable trier of fact would

28

see anything but the underlying copyrighted character when looking at ERG's costumes." *Id.* at 1223.  The court stated:

> In other words, because ERG's costumes are "instantly identifiable as embodiments" of the underlying copyrighted characters in "yet another form," no reasonable juror could conclude that there are any "non-trivial" artistic differences between the underlying cartoon characters and the immediately recognizable costumes that ERG has designed and manufactured.

*Id.* at 1223 (*quoting Durham*, 630 F. 2d at 908-09); *see also Towle Mfg. Co., v. Godinger Silver Art Co.*, 612 F. Supp. 986, 992 (S.D.N.Y. 1985) (bottle design no sufficiently different from prior art to warrant copyright protection); *Kate Aspen, Inc., v. Faishioncraft-Excello, Inc.*, 370 F.Supp. 2d 1333, 1337 (N.D. Ga 2005) (wedding cake designs not sufficiently different from prior art in public domain).

As set forth in footnote 2 above, there are many other cases where courts have granted summary judgment finding copyrights in derivative works invalid because they were not sufficiently different from the preexisting work upon which the derivative work was based.  *See infra* note 3.

Here, Plaintiff's Bigfoot Statue is admittedly just a replica of the Patterson Gimlin Bigfoot.  (Ex. 4 at p. 84) ("I would like to recreate a life sized version of bigfoot in this pose. . . . I would like to construct a realistic version of this infamous film still.").  All of the identifiable features of the silhouette of Plaintiff's Bigfoot Statue (which is all that is at issue here), were taken from the Patterson Gimlin Bigfoot and are therefore not original to Plaintiff:  The silhouette of Plaintiff's Bigfoot Statue and the Patterson-Gimlin Bigfoot both depict Bigfoot:  [1] walking mid-stride, [2] walking from left to right, [3] with the left arm forward and the right arm back, [4] with the right leg forward and the left leg back, [5] looking to the right over its right shoulder, [6] looking from the side as opposed to head on, [7] leaning

slightly forward, [8] looking back at the camera, [9] from the same angle, [10] covered in hair, [11] with a large, hairy head, [12] with a large right thigh, [13] with a large right shoulder.  (Ex. 9; Kneafsey Decl., ¶ 7; Ex. 5 at p. 99 (GAINER0000304); Ex. 4 at p. 85; Complaint, ¶¶ 16-17; Ex. 2 at 75:25-83:1, 91:7-94:24, 96:15-100:22, 102:22-106:1, 107:4-20, 109:24-110:2, 151:16-20; 159:14-19; 172:8-15, 286:6-16; Ex. 1 at Response 1).

In fact, the similarities between the silhouette of Plaintiff's Bigfoot Statue and the Patterson-Gimlin Bigfoot are even greater than the similarities at issue with regard to: [1] the Uncle Sam Bank in *L. Batlin*, [2] the painting of Dorothy in *Gracen*, [3] the batman in *Sapon*.  In sum, The Ketchum Bigfoot Silhouette is an "instantly identifiable as [an] embodiment[] of the underlying [Patterson Gimlin Bigfoot] . . . in yet another form."  *Entm't Research Grp.,* 122 F.3d at 1223.

Using language from the case law, Plaintiff "cop[ied], in addition to the overall appearance, the most qualitatively important separate elements of [the Patterson-Gimlin Bigfoot]."  *Sapon,* 2002 U.S. Dist. LEXIS 5395 at *28.  "There is no "genuine difference between the underlying work of art and the copy of it for which protection is sought," particularly as to the silhouette.  *L. Batlin,* 536 F. 2d at 492.  The Ketchum Bigfoot Silhouette is not "substantially different from the underlying work." *Gracen*, 698 F. 2d at 305 (7th Cir. 1983), *Gracen,* 698 F. 2d at 305 ("a derivative work must be substantially different from the underlying work to be copyrightable.").

Viewing the [Ketchum Bigfoot Silhouette] as a whole, no reasonable jury could find that it satisfies the requirements of originality." *Id.*  "[N]o reasonable juror could conclude that there are any 'non-trivial' artistic differences between the underlying [Patterson Gimlin Bigfoot] and the [Ketchum Bigfoot Silhouette]." *Entm't Research Grp.,* 122 F.3d at 1223.

As a result, summary judgment should be granted.

**b.**     <u>**Part Two of the Durham Test:**</u>  **Granting Plaintiff a Copyright in the Ketchum Bigfoot Silhouette Would Give Plaintiff a Monopoly on Bigfoot**

In *Entm't Research Grp. Inc.,* the Ninth Circuit explained that a copyright in a derivative work is invalid if it would adversely affect the rights in the pre-existing works.  *Entm't Research Grop., Inc.*, 122 F.3d at 1224.  The court explained that this consideration is particularly of concern where granting copyright protection would essentially give the plaintiff a monopoly over famous characters.

> Given the fact that ERG's costumes are so similar to the well-known copyrighted characters that they are based upon . . . granting ERG a copyright in its costumes would have the practical effect of providing ERG with a de facto monopoly on all inflatable costumes depicting the copyrighted characters also in ERG's costumes.

*Id.* at 1224.  The court noted that *Gracen* and *Durham* expressed the same concern. *Id; Gracen,* 698 F. 2d at 305 ("The requirement of originality is significant chiefly in connection with derivative works, where if interpreted too liberally it would paradoxically inhibit rather than promote the creation of such works by giving the first creator a considerable power to interfere with the creation of subsequent derivative works from the same underlying work.").  The Second Circuit in *L. Batlin* expressed the same concern with regard to derivative works based on works in the public domain.  "To extend copyrightability to minuscule variations would simply put a weapon for harassment in the hands of mischievous copiers intent on appropriating and monopolizing public domain work." *L. Batlin,* 536 F.2d 492.

As a result, the courts have been particularly rigorous in not allowing copyright protection for derivative works in famous characters such as Dorothy from the Wizard of Oz (*Gracen*), Toucan Sam, Dino, Dough Boy Cap'n Crunch (*Entm't Research*), Mikey Mouse, Mickey Mouse, Donald Duck and Pluto Dog

1   (*Durham*), Uncle Sam (*L. Batlin*), Batman (*Sapon*), and the Statue of Liberty (*Past*

2   *Pluto Prods*) because to do so would be to be to give the plaintiffs in these cases "a

3   pseudo-monopoly" on the underlying famous work.

4        The exact same concern is present here.  To give Cameron Gainer a copyright

5   protection over the silhouette of Plaintiff's Bigfoot Statue would give him the right

6   to harass any person depicting the famous Patterson Gimlin Bigfoot with a lawsuit

7   for copyright infringement.  For example, Gainer could accuse virtually any one of

8   the 80+ images of Bigfoot currently sold on Amazon.  (Ex. 8).  If Plaintiff was

9   granted a copyright in the silhouette of his statute, no one would be able to re-create

10  the famous Bigfoot image because Plaintiff, having copied it, would claim that the

11  subsequent work was "substantially similar" to his.  *Entm't Research*, 122 F.3d at

12  1224 ("Any subsequent costume makers and the original copyright holders

13  themselves would be limited by the granting of a derivative copyright in this

14  situation or at the very least be vulnerable to harassment.") (quoting trial court)

15  (ellipses omitted); *Gracen,* 698 F. 2d at 305 ("the purpose of the term ["original"] in

16  copyright law is not to guide aesthetic judgments but to assure a sufficiently gross

17  difference between the underlying and the derivative work to avoid entangling

18  subsequent artists depicting the underlying work in copyright problems."); *P&G,*

19  1998 U.S. Dist. LEXIS 17773 at *114 ("P&G cannot be granted the protection it

20  seeks because such relief would effectively lend P&G a monopoly over certain

21  basic, uncopyrightable ideas about how to illustrate the effect of fluoride on teeth.").

22  **IV.   CONCLUSION**

23        Defendant respectfully requests that summary judgment be granted.

24

25   DATED:  March 12, 2018          THE KNEAFSEY FIRM, INC.

26                                            */s/ Sean M. Kneafsey*

27                                     By _____
                                              Sean M. Kneafsey

28                                     Attorneys for Defendant and Counter-Claimant
                                       THE KETCHUM GROUP, INC.