THE KNEAFSEY FIRM, INC.
SEAN M. KNEAFSEY (SBN 180863)
skneafsey@kneafseyfirm.com
KURT A. DREIBHOLZ (SBN 212779)
kdreibholz@kneafseyfirm.com
800 Wilshire Blvd., Suite 710
Los Angeles, California 90017
Phone:  (213) 892-1200
Fax:  (213) 892-1208

Attorneys for Defendant and Counter-claimant
THE KETCHUM GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON GAINER, an individual<br><br>Plaintiff,<br><br>vs.<br><br>THE KETCHUM GROUP, INC., d/b/a OUTDOOR TECHNOLOGY,<br><br>Defendant.<br><hr>AND RELATED COUNTER-CLAIMS | Case No.: 8:17-CV-00672<br><br>[Hon. James V. Selna]<br><br>**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      July 16, 2018<br>Time:      1:30 p.m.<br>Courtroom:  10C |

1

**TABLE OF CONTENTS**

2

I.   INTRODUCTION ......................................................................... - 1 -

3

II.   DISCUSSION .............................................................................. - 2 -

4

   A.   Plaintiff's Alleged Copyright Interest In The Bigfoot Silhouette Is

5

      Invalid….. ............................................................................... - 2 -

6

     1.  Plaintiff's Bigfoot Is Derivative of the Patterson Gimlin Bigfoot .......... - 2 -

7

     2.  Plaintiff's Bigfoot is an Unlawful Derivative Work ............................... - 3 -

8

     3.  Plaintiff's Motion Ignores the *Durham Test* for Copyrightability of

9

        Derivative Works. ...................................................................... - 4 -

10

        a.  Plaintiff Cannot Satisfy Prong One of the *Durham* Test ................... - 4 -

11

        b.  Part Two of the Durham Test:  Granting Plaintiff a Copyright Interest

12

           In the Ketchum Bigfoot Silhouette Would Give Plaintiff a Monopoly

13

           on Bigfoot ........................................................................ - 6 -

14

     4.  Plaintiff's Contentions of Copying Are Irrelevant to the Issue of Validity

15

       Which Must Be Decided First ................................................... - 8 -

16

   B.   If the Court Reaches the Issue of Defendants' Additional Affirmative

17

      Defenses, Partial Summary Judgment Should Not Be Granted ................ - 8 -

18

     1.  Defendant Asserted Its Statute of Limitations Affirmative Defense Only to

19

       the Extent Plaintiff Seeks Damages Beyond the Three Year Statutory

20

       Period ........................................................................... - 8 -

21

     2.  Defendant's Latches Affirmative Defense Is Available as a Defense to

22

       Plaintiff's Equitable Claims for Injunctive Relief as Well as in

23

       Determining the Profits "Attributable to the Infringement" ................... - 9 -

24

     3.  There is a Factual Dispute as to Defendant's Unclean Hands Defense - 11 -

25

     4.  There is a Factual Dispute as to Whether Plaintiff Lacks Standing and/or

26

       Abandoned His Copyright Interest In His Bigfoot Statue ................... - 14 -

27

     5.  Innocent Infringement is a Defense to the Copyright Act's Remedies  - 17 -

28

i

6.  If The Court Does Not Grant Summary Judgment In Defendant's Favor, There is, at a Minimum, a Factual Dispute as to Whether Plaintiff Can State a Claim ........................................................................... - 17 -

C.   Implied License and Misuse of Copyright Claims ................................. - 17 -

III.  CONCLUSION ............................................................................. - 18 -

ii

# TABLE OF AUTHORITIES

**Cases**

*Brewer v. Salyer*, 2007 U.S. Dist. LEXIS 66379, at *3-4 (E.D. Cal. 2007)(" "Rule 12(h)(2)..................................................................................... - 17 -

*Cf. Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990)..................................................................................... - 12 -

*Commer. Ventures, Inc. v. Scottsdale Ins. Co.*, 2017 U.S. Dist. LEXIS 154830, at *7 (C.D. Cal. 2017) ............................................................... - 5 -

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)……. ..................................................................................... - 11 -

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1223 (1997) ..........................................................- 3 -, - 5 -, - 7 -

*Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1079 (9th Cir. 2000) ..................... - 2 -

*Express, LLC v. Forever 21, Inc.*, 2010 U.S. Dist. LEXIS 91705 (C.D. Cal. 2010)…. ..................................................................................... - 12 -, - 13 -

*Hernandez v. Balakian*,  2007 U.S. Dist. LEXIS 43680 (E.D.Cal. Jun. 1, 2007)……. ..................................................................................... - 17 -

*Hunt v. City of Portland*, 599 F.App'x 620, 621 (9th Cir. 2009)......................... - 5 -

*Insurance Co. of North America*, 128 Cal.App.3d at 306 ........................ - 11 -, - 14 -

*L.A. News Serv. v. Reuters TV Int'l, Ltd.*, 149 F.3d 987, 995 (9th Cir. 1998)...... - 17 -

*L.A. News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992) ............................... - 14 -

*Marya v. Warner/Chappell Music, Inc*. 131 F. Supp. 3d 975, 991-992 (C.D. Cal. 2015)..................................................................................... - 16 -

*Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1051 (D. Ariz. 2011)..................... - 16 -

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 2017 U.S. Dist. LEXIS 22561, **8-9 (N.D. Cal. 2017) ........................................................... - 16 -

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984) ............ - 5 -

*Petrella v. MGM,* 134 S. Ct. 1962, 1967 (2014) .................................... - 9 -

*Pond v. Insurance Co. of North America*, 151 Cal.App.3d 280, 289-290 (1984).......
..................................................................................................................... - 11 -

*R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 692 (S.D. Tex.
2000)................................................................................................................ - 13 -

*Rentmeester v. Nike,* 2018 U.S. App. LEXIS 4817 (9th Cir. 2018) ............... - 2 -, - 3 -

*Robinson v. Adams*, 2009 U.S. Dist. LEXIS 108383, at *2-3 (E.D. Cal. 2009).........
..................................................................................................................... - 17 -

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980, 988 (S.D.N.Y.
1980)............................................................................................................... - 13 -

*Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir. 2003) ............................................. - 4 -

*Testa v. Janssen*, 492 F.Supp. 198, 201 (W.D. Pa. 1980) ......................... - 11 -, - 12 -

*U.S. Auto Parts Network, Inc. v. Parts Geek, Ltd. Liab. Co.*, 692 F.3d 1009, 1016
(9th Cir. 2012) ................................................................................................ - 4 -

*Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I.1976)  - 11 -, - 12 -,
- 13 -

*Wyatt Tech. Corp. v. Malvern Instruments Incorporation,* 2009 U.S. Dist. LEXIS
66097, **39-40 (C.D. Cal. 2009).................................................................. - 16 -

**Statutes**

1 Nimmer § 94 ...................................................................................................... - 14 -

1 Nimmer, Copyright § 4.01(B) (1978)............................................................... - 11 -

17 U.S.C. § 409..................................................................................................... - 13 -

17 U.S.C. § 504(c)(2) ........................................................................................... - 16 -

17 U.S.C. § 507(b) .......................................................................................... - 8 -, - 9 -

28 U.S.C. § 1746.................................................................................................... - 5 -

iv

## I.    INTRODUCTION

Plaintiff's Motion for Summary Judgment raises the same arguments as (and is largely cut and paste from) his Opposition to Defendant's Motion for Summary Judgment.  So as to avoid further duplicative filings, Defendant has filed a request for judicial notice, respectfully requesting that the court take judicial notice of Defendant's previously filed Motion, Reply, and the related Exhibits 1-13.

Lost in Plaintiff's Motion is the fact that Plaintiff's claims of originality are limited to features found in the accused black and white Ketchum Bigfoot silhouette/line drawing.  [*See* ECF No. 40-1, Defendant's MSJ, at part III.D.1].



As a result, Plaintiff's claims of having protectible copyright interests in features such as his allegedly original "facial details," "hair length and texture" (Ex. 1 at pp. 11-12), and, more recently "hairless ape-like hands" [ECF No. 42 at 19:21], are irrelevant because those features are not found in the accused silhouette. Further, Plaintiff has now disavowed any protection in "body posture" and "position of limbs" (Ex. 1 at pp. 11-12) by contending that "the pose is not copyrightable." [ECF No. 42 at 15:9].

Likewise, Plaintiff's claim that "Mr. Gainer expressly set out to create a realistic three-dimensional depiction of bigfoot that differed substantially from that depicted in the two-dimensional Frame 352" ignores that he is now trying to claim originality in the two-dimensional silhouette.  [ECF No. 55-1, Plaintiff's MSJ, at pp. 18:2-4].  And again, what Mr. Gainer "set out to do" is irrelevant to a copyright infringement analysis.  [ECF No. 51, Defendant's Reply, at 15:21].

Based on the foregoing, summary judgment should be granted in Defendant's favor and the Court need not even reach the issue of Defendant's remaining affirmative defenses.  Nonetheless, Defendant addresses those affirmative defenses in part II.B below.

## II.    DISCUSSION

### A.    Plaintiff's Alleged Copyright Interest In The Bigfoot Silhouette Is Invalid

#### 1.    Plaintiff's Bigfoot Is Derivative of the Patterson Gimlin Bigfoot

Plaintiff's contention that his Bigfoot Statue is not derivative of the Patterson Gimlin Bigfoot is without merit.

First, Plaintiff contends that in order to be a derivative work, his Bigfoot must be based on a work that is copyrightable.  It was.  The Patterson Gimlin film is not only copyrightable[1] but was in fact registered with the United States Copyright Office.  (Ex. 3).  The United States Copyright Office Certificates of Registration are attached as Exhibit 3.  (Ex. 3).

Second, Plaintiff argues that his work is not derivative of the Patterson Gimlin Bigfoot because he only copied the Patterson Gimlin pose, and "the pose is not copyrightable."  [ECF No. 42 at 15:9].  That is not a correct statement of the law.  In *Rentmeester v. Nike,* 2018 U.S. App. LEXIS 4817 (9th Cir. 2018), cited by Plaintiff, the photograph at issue was a photograph of Michael Jordan in a specific pose.  The Ninth Circuit held that the author was "*entitled protection only for the way the pose is expressed in his photograph . . . .*"  *Id.*  at *14 (emphasis added).  What the court

---

[1] The case law is clear that the work need not be "copyrighted" only that "the preexisting work must come from within the general subject matter of copyright set forth in section 102, regardless of whether it was or ever copyrighted."  *Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1079 (9th Cir. 2000).

1    explained, however, was that the plaintiff could not "prevent others from
2    photographing a person in the same pose." *Id.*

3         Furthermore, even if the "pose" aspect of the Patterson Gimlin film was not
4    separately copyrightable (which it is), the court explained that "[p]hotographs
5    cannot be dissected into protected and unprotected elements." *Rentmeester v. Nike,*
6    2018 U.S. App. LEXIS 4817 (9th Cir. 2018).  As a result, Plaintiff's claim that his
7    work is not derivative of the Patterson Gimlin film because he only copied the pose,
8    fails.

9         Finally, Plaintiff has admitted that "Mr. Gainer's Works *do recreate* the
10   iconic pose of the creature depicted in the Patterson Gimlin film" and that "*Mr.*
11   *Gainer readily admitted that he sought to recreate the iconic pose of the bigfoot*
12   *shown in a specific frame of the Patterson Gimlin Film*."  [ECF No. 42 at 15:8-9]
13   (emphasis added).  As a result, given that there is no factual dispute that "Mr.
14   Gainer's Works *do recreate*" the Patterson Gimlin pose, there can be likewise no
15   factual dispute that the Plaintiff's Bigfoot silhouette is substantially similar to, and
16   therefore, derivative of the iconic pose that Plaintiff "recreate[d]"/copied.

17        "[N]o reasonable trier of fact would see anything but the underlying [Bigfoot]
18   when looking at Plaintiff's [Bigfoot]." *Entertainment Research Group, Inc. v.*
19   *Genesis Creative Group, Inc.,* 122 F.3d 1211, 1223 (1997).  And it is undisputed
20   that is exactly what Plaintiff was trying to do.  (Ex. 4 ("For the exhibition, I would
21   like to recreate a life sized version of bigfoot in this pose. . . . I would like to
22   construct a realistic version of this infamous film still.")).

23        **2.    Plaintiff's Bigfoot is an Unlawful Derivative Work**

24        Plaintiff admits that he did not obtain permission from the owners of the
25   copyrights in the Patterson-Gimlin film "to recreate the iconic pose of the bigfoot
26   shown in a specific frame of the Patterson Gimlin Film."  [ECF No. 42 at 15:8-9;
27   Ex. 1 at Response 6).  As a result, his "resulting derivative work is not entitled to
28

- 3 -

1  copyright protection." *U.S. Auto Parts Network, Inc. v. Parts Geek, Ltd. Liab. Co.*,
2  692 F.3d 1009, 1016 (9th Cir. 2012).

3       This issue is fully briefed in Defendant's Motion for Summary Judgment and
4  Plaintiff's Reply Brief.  [*See* ECF No. 40-1, Defendant's MSJ, at part III.C. at pp.
5  10-11; ECF No. 51, Defendant's Reply, at part GII.B. at pp. 4-6].

6              **3.      Plaintiff's Motion Ignores the *Durham Test* for**
7                  **Copyrightability of Derivative Works.**

8       Plaintiff's Motion ignores the *Durham* Test as well as the entire body of law
9  on derivative works.  Defendant has extensively briefed Prong One of the *Durham*
10  test in conjunction with its Motion for Summary Judgment and Reply.  So as not to
11  file repetitive briefs with the Court, Defendant will only summarize its arguments
12  here.

13              **a.      Plaintiff Cannot Satisfy Prong One of the *Durham* Test**
14       Plaintiff cannot satisfy prong one of the *Durham* test for the following
15  reasons.

16       First, the courts have regularly granted summary judgment in derivative
17  copyright matters, particularly in cases involving "well known" characters such as
18  Bigfoot.  [*See* ECF No. 40-1, Defendant MSJ, at part III.D.3.a, pp. 15-24; ECF No.
19  51, Defendant Reply, at part II.C., pp. 6-10].  As set forth in Defendants' MSJ, the
20  differences between the plaintiffs' works in *Batlin* (Uncle Sam)*, Gracen* (Dorothy)
21  and *Sapon* (Batman) (where subject images and derivative works are available and
22  contained in Defendant's MSJ), are far greater than any alleged difference between
23  the Ketchum Bigfoot Silhouette and Frame 352.

24       Second, Plaintiff's alleged original features in the Bigfoot silhouette are either
25  not found in the silhouette at all or features that "naturally flow from" Bigfoot.
26  *Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir. 2003).  These features are discussed at
27  length in Defendant's Reply Brief in Support of Summary Judgment.  [*See* ECF No.
28  51, Defendant's Reply, at part II.C.1, pp. 10-13] (discussing allegedly "longer

torso," "shorter feet and legs," "flat footed stance," "lifelike facial features," hairless ape like hands," and "long flowing fur.").

Third, Plaintiff's Motion again contends that Mr. Gainer put a great deal of work into creating his statue, claiming that it was a "massive undertaking." [ECF No. 55-1 at 12:5]. However, "originality is not present solely because [Plaintiff] placed a lot of thought and effort into figuring out how to transform the two-dimensional [Bigfoot] into [a] three-dimensional [Bigfoot]." *Entertainment Research Group v. Genesis Creative Group.* 122 F.3d 1211, 1222 (9th Cir. 1997) ("Indeed, the courts and commentators seem to agree that making decisions that enable one to reproduce or transform an already existing work into another medium or dimension - though perhaps quite difficult and intricate decisions - is not enough . . . ."). [*See* ECF No. 51, Defendant's Reply at part II.C.1 at pp. 14-15].

Furthermore, virtually all of Plaintiffs' evidence of his "massive undertaking" is based inadmissible hearsay statements of his expert, Shannon Gilley. In this regard, Plaintiff did not submit an expert declaration of Shannon Gilley that complies with 28 U.S.C. § 1746. Instead, Plaintiff simply submitted Mr. Gilley's report which is inadmissible hearsay. *See Hunt v. City of Portland*, 599 F.App'x 620, 621 (9th Cir. 2009) (concluding that expert report was inadmissible hearsay); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984) (explaining that Federal Rule of Evidence 703 "does not allow the admission of [expert] reports to establish the truth of what they assert"); *Commer. Ventures, Inc. v. Scottsdale Ins. Co.*, 2017 U.S. Dist. LEXIS 154830, at *7 (C.D. Cal. 2017) (sustaining objections to two expert reports as inadmissible hearsay). In fact, Mr. Gilley's report is double hearsay as all he does is repeat what Cameron Gainer allegedly told him about the creation of the statue.

Based on the foregoing, Plaintiff cannot meet part one of the *Durham* test.

### b. __Part Two of the Durham Test__:  Granting Plaintiff a Copyright Interest In the Ketchum Bigfoot Silhouette Would Give Plaintiff a Monopoly on Bigfoot

Plaintiff's Brief ignores prong two of the *Durham* Test and does not even discuss it.  Part two of the *Durham* test queries whether giving Plaintiff a copyright interest in the Ketchum Bigfoot Silhouette would give Plaintiff a "defacto monopoly" in the Silhouette of Frame 352.  Here, no reasonable trier of fact could find anything other than it would.  This issue is also discussed on Defendants Motion for Summary Judgment and Reply Brief.  [*See* ECF No. 40-1, Defendant's MSJ, at part III.D.3.b. at pp. 24-25; *see* ECF No. 51, Defendant's Reply Brief, at part II.C.2. at pp. 16-18.

Briefly, giving Plaintiff even an arguable copyright interest (by allowing him to survive summary judgment) would allow Plaintiff to sue any one of the hundreds of online images that contain the same allegedly original torso, hairy feet, legs, ape like hands, flat footed stance, and long hair and would therefore give a *de facto* monopoly in Bigfoot.



| | | | |
|---|---|---|---|
| (Ex. 8, p. 148) | (Ex. 8, p. 150) | (Ex. 8, p. 151) | (Ex. 8 p. 152) |
| (Ex. 8 p. 154) | (Ex. 8 p. 168) | (Ex. 8, p. 174) | (Ex. 8 p. 184) |

1

2

3

4

5

  

| (Ex. 8, p. 187) | (Ex. 8 p. 191) | (Ex. 8, p. 199) | (Ex. 8 at p. 209) |

6 (*See also* Gugliuzza Decl., at ¶ 5).

7

8

9

10

11

12



13

14

15

16 (*See* Gugliuzza Decl., at ¶ 4; *see also* Request for Judicial Notice).

17      The artists of the foregoing Bigfoot Silhouettes and "[a]ny subsequent

18 [Bigfoot artist] . . . . would be limited by the granting of a derivative copyright in

19 this situation or at the very least be vulnerable to harassment." *Entertainment*

20 *Research*, 122 F.3d at 1224.

21      In sum, if summary judgment is denied, no artist that learned of this case

22 would ever risk drawing a silhouette of Bigfoot.  To do so would risk having to

23 defend a federal copyright infringement action through trial—an incredible expense

24 for an individual.  This alone would give Plaintiff a *de facto* monopoly on Bigfoot's

25 silhouette.

26

27

28

### 4.    Plaintiff's Contentions of Copying Are Irrelevant to the Issue of Validity Which Must Be Decided First

As set forth in Defendant's Reply Brief, Plaintiff's claims of infringement are irrelevant, as only the validity of Plaintiff's alleged copyright interest in the silhouette of his Bigfoot Statue are at issue on this motion.  [*See* ECF No. 51, Defendant's Reply, at part II.D. at p. 18].  Therefore, these arguments should be disregarded as only validity is at issue on this motion.

### B.    If the Court Reaches the Issue of Defendants' Additional Affirmative Defenses, Partial Summary Judgment Should Not Be Granted

For the reasons set forth above, Defendant requests that summary judgment be granted in Defendant's favor because Plaintiff cannot assert a valid copyright interest in the accused Bigfoot silhouette.  As a result, Defendant contends that the Court need not even reach the issue of Defendant's remaining affirmative defenses. However, if the Court does, partial summary judgment should not be granted as to these defenses for the reasons set forth below.

### 1.    Defendant Asserted Its Statute of Limitations Affirmative Defense Only to the Extent Plaintiff Seeks Damages Beyond the Three Year Statutory Period

As Plaintiff's motion states, the statute of limitations for copyright damages is three years.  17 U.S.C. § 507(b).

Plaintiff's motion states that "Mr. Gainer has already clarified to Outdoor Tech that he is not seeking relief for harm extending prior to this three year statute of limitations."  [ECF No. 55-1 at 19:23-25].

That is not what Plaintiff's Rule 26 Disclosures or Interrogatory Responses say;[2] however, if by that statement, Plaintiff is stipulating not to claim any actual damages or portion of any of Defendant's profits occurring three years prior to the filing of the Complaint, then Outdoor Tech will concurrently not assert this defense to any damages being sought within the three year period.

> **2.     Defendant's Latches Affirmative Defense Is Available as a Defense to Plaintiff's Equitable Claims for Injunctive Relief as Well as in Determining the Profits "Attributable to the Infringement"**

Defendant does not assert a latches defense to shorten the three year statutory period for claiming damages pursuant to 17 U.S.C. § 507(b).

Instead, "plaintiff's delay can always be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the 'profits of the infringer *attributable to the infringement*.'" *Petrella v. MGM,* 134 S. Ct. 1962, 1967 (2014) (quoting 17 U.S.C § 504(b)).

Here, it is undisputed that The Ketchum Group has been using the accused logo since 2009 and Plaintiff did not assert any claim of copyright infringement until 2016. (Gugliuzza Decl. at ¶¶ 7-15). In addition, when Plaintiff did first contact The Ketchum Group in 2016, he did not even reference the Patterson Gimlin photograph at all, much less identify what limited features of the silhouette he claimed were original to him. (Gugliuzza Decl., ¶¶ 13-15). Likewise, when Plaintiff registered his Bigfoot with the Copyright Office, he did not disclose that his Bigfoot was based on the Patterson Gimlin Bigfoot, much less disclose what "new material covered by the copyright claim for which registration is sought." (Ex. 10 p. 229, 231; Ex. 11, p. 238, 241; Ex. 2 at 180:6-185:20).

---

[2] Notably, Plaintiff's Rule 26 disclosures and interrogatories contained no such limitation. In fact, they contained no claimed amount of damages in violation of Rule 26. (*See* Ex. 14-16; Kneafsey Decl., ¶¶ 2-6).

1   Plaintiff certainly did not disclose to The Ketchum Group or to the Copyright
2   Office (and therefore the public) that his "pose is not copyrightable" which he
3   admitted for the first time in Opposition to Defendant's Motion for Summary
4   Judgment.  [ECF No. 42 at 15:8-11; *See* ECF No 51, Defendant's Reply at 3:3-6
5   and11:1-7].   To the contrary, Plaintiff publicly asserted in his Compliant that he had
6   a copyright interest in his Bigfoot's " <u>body posture</u>."  (Complaint, ¶ 17-18)
7   (emphasis added).

8   The Ketchum Group has invested substantial sums in its marketing and
9   customer service efforts in attempt to make this 14 person company survive.
10  Virtually every year since inception it has operated at a loss.  The company does not
11  sell its logo.  Instead, it is an outdoor products company that sells electronic outdoor
12  sports related products such as headphones, helmets, and ear buds.  Virtually none
13  of the Ketchum Group's income is "attributable to the infringement" of whatever
14  limited features of the Bigfoot Silhouette Plaintiff claims a copyright interest in.
15  (*See* Gugliuzza Decl, ¶ 14).  In fact, in violation of Rule 26, Plaintiff himself has
16  also failed to identify what portion of Defendant's income it contends is
17  "attributable to the infringement."  17 U.S.C § 504(b); Ex. 14-16; Kneafsey Decl. ¶¶
18  2-6; Gugliuzza Decl., ¶¶ 7-9).

19  Plaintiff's delay in bringing his claims, his delay in identifying the scope of
20  his claims, and his shifting claims as to his allegedly original claims have resulted in
21  prejudice to The Ketchum Group.  (*See* Gugliuzza Decl, ¶ 14).  These are facts that
22  the court should consider should this court ever reach the injunction or remedy
23  phase of this litigation.

24  As a result, there are issues of fact as to Defendant's latches defense and
25  partial summary judgment should not be granted as to this defense.

26

27

28

**3.      There is a Factual Dispute as to Defendant's Unclean Hands Defense**

The same facts set forth above with regard to the equitable defense of laches also apply to the equitable defense of unclean hands.

Plaintiff's statement of authority – that "an action 'will be dismissed under the theory of unclean hands if [a] defendant establishes that [the] plaintiffs evidence was false and that plaintiff was involved in a scheme to defraud the public'" [ECF No. 55-1 at 22:19-21] is too restrictive, suggesting the only way Outdoor Tech may prove the equitable defense of unclean hands is by establishing that Plaintiff's evidence is false *and* that Plaintiff schemed to defraud the public.  The defense is not so narrow.

"The [unclean hands] doctrine bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) (citing *Insurance Co. of North America*, 128 Cal.App.3d at 306 & *Pond v. Insurance Co. of North America*, 151 Cal.App.3d 280, 289-290 (1984).

In order for the unclean hands doctrine to apply, the plaintiff's transgression "must harm or prejudice a defendant in some way."  *Testa v. Janssen*, 492 F.Supp. 198, 201 (W.D. Pa. 1980).  As the court explained in *Testa*:

> *Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I.1976) illustrates the type of transgression that warrants application of the doctrine of unclean hands.  In *Vogue Ring*, the plaintiff's copyright application omitted the fact of publication prior to receipt of a copyright.  Prior publication voids a common law copyright and places a work within the public domain.  *See* 1 Nimmer, Copyright § 4.01(B) (1978).  Since the

1          plaintiff's misrepresentation went to the very validity of

2          the copyright, the district court held that the doctrine of

3          unclean hands barred the claim. 410 F.Supp. at 616.

4    *Testa v. Janssen*, 492 F.Supp. 198, 201 (W.D. Pa. 1980) (construing *Vogue Ring*,

5    410 F.Supp. at 614-616).

6         In *Vogue Ring*, Plaintiff failed to fill in Item #7 on its application for

7    copyright registration, which asked, among other things, whether there was "new

8    matter" in the plaintiff's version of a ring so that "the Copyright Office could then

9    determine whether the changes were sufficient to justify the granting of a new

10   registration to plaintiff." *Vogue Ring*, 410 F.Supp. at 614.  The plaintiff left Item #7

11   in the copyright application blank.  The court found that this was "not an

12   insubstantial omission." *Id*. at 615.  "If this item had been completed, the Copyright

13   Office would have had the opportunity to evaluate whether or not the plaintiff had

14   made any copyrightable changes." *Id*. at 615.  This unexplained omission, coupled

15   with other factors, caused the court to conclude that even if the copyright was

16   otherwise valid, the court would have to hold the copyright unenforceable because

17   of unclean hands. *Id*. at 616.

18        *Vogue Ring* is cited with approval in the Central District in *Express, LLC v.*

19   *Forever 21, Inc.*, 2010 U.S. Dist. LEXIS 91705 (C.D. Cal. 2010).  In *Express, LLC*,

20   the court wrote:

21         The Court fails to see why it should give presumptive

22         effect to a copyright  registration that contradicts the

23         sworn testimony of the purported creator of the

24         copyrighted work. *Cf. Masquerade Novelty, Inc. v.*

25         *Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990)

26         ("It may be that the correct approach in situations where

27         there has been a material, but inadvertent omission, is to

28         deprive the plaintiff of the benefits of § 410(c) and to

1                require him to establish the copyrightability of the

2                articles he claims are being infringed.").

3 *Express, LLC*, 2010 U.S. Dist. LEXIS 91705, at *18-19.

4       The *Express* court went on to cite *Vogue Ring* with approval, writing:

5                Indeed, a number of courts have granted summary

6                judgment against a copyright owner in light of evidence

7                that the owner failed to inform the Copyright Office that

8                the work at issue was derived from another pre-existing

9                work. *See R. Ready Productions, Inc. v. Cantrell*, 85

10                F.Supp.2d 672, 692 (S.D. Tex. 2000) (invalidating the

11                asserted copyright where "Plaintiffs failed to disclose in

12                their registration application that there were pre-existing

13                mailers on which Plaintiffs' works were substantially

14                based . . . [and] this was not an inadvertent error"); *Russ*

15                *Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp.

16                980, 988 (S.D.N.Y. 1980); *Vogue Ring Creations, Inc. v.*

17                *Hardman*, 410 F.Supp. 609, 615-16 (D.R.I. 1976).

18 *Express, LLC*, 2010 U.S. Dist. LEXIS 91705, at *19-20 n.9.

19       As set forth above, in violation of 17 U.S.C. § 409 and the Instructions for

20 Section 6 of Form VA, Plaintiff failed to disclose to the Copyright Office (1) that

21 Plaintiff's Bigfoot Statue was derived from the Patterson-Gimlin Bigfoot, and (2)

22 the new material he added to the Patterson-Gimlin Bigfoot. (Ex. 10 p. 229, 231; Ex.

23 11, p. 238, 241; Ex. 2 at 180:6-185:20). Plaintiff's nondisclosure had to be

24 intentional because: [1] he reviewed the application before it was filed, and [2] he

25 only filed the application in anticipation of filing this suit. As a result, he knew full

26 well that he was asserting a copyright interest against a silhouette of Bigfoot and he

27 knew that he had copied the famous Patterson Gimlin Pose. He and his lawyers

28 knew that it would give them a tactical advantage if they did not disclose that this

1    was a derivative work because they would be bound to what they listed on their

2    application.  *See Russ Berrie & Co. v. Elsner,* 482 F. Supp. 980, 988 (S.D.N.Y.

3    1980) ("Here, however, the Copyright Office had no opportunity to pass on

4    plaintiff's claim accurately presented.  The knowing failure to advise the Copyright

5    Office of facts which might have occasioned a rejection of the application constitute

6    reason for holding the registration *invalid and thus incapable of supporting an*

7    *infringement action*, 1 Nimmer § 94, or denying enforcement on the ground of

8    unclean hands."  (emphasis added)).

9        This significantly prejudiced Defendant because Defendant could not

10   determine the scope of Plaintiff's alleged copyright claim which has now been

11   shifting throughout this case.  This has not only prejudiced Defendant's defense of

12   this case but also in determining what redesign decisions to make.  Instead, Plaintiff

13   has demanded that Defendant completely abandon its registered trademark that it

14   has been using for almost 10 years.

15       Based on the foregoing there are triable issues of fact as to Defendant's

16   unclean hands defense.  *L.A. News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992)

17   ("The application of the unclean hands doctrine raises primarily a question of

18   fact.'"); *see also Insurance Co. of North America v. Liberty Mutual Ins. Co.*, 128

19   Cal.App.3d 297, 306 (1982).

20            **4.    There is a Factual Dispute as to Whether Plaintiff Lacks**

21                 **Standing and/or Abandoned His Copyright Interest In His**

22                 **Bigfoot Statue**

23       Plaintiff promptly sold his Bigfoot Statue in 2007 after he constructed it and

24   has not had possession of it since that time.  (Ex. 17 at 42:5; Ex. 18).  It has been

25   publicly displayed at multiple locations.  (Ex. 17 at 42).

26       The Bigfoot Statue is "meant to be a "photo-op prop' that allows the viewer

27   to be a participant in the project as re-creator of the original [Patterson Gimlin] film

28   footage or perpetuator of it as a supposed hoax."  (Ex. 17 at 122:8-15, Ex. 19, Ex.

21).  The current museum sold its own apparel including a t-shirt that reads "I ❤️ "
with a silhouette of the Big Foot statue.  (Ex. 20; Ex. 19 at Response 20; Ex. 17 at
252:14-253:10).  After selling the statue, Gainer received no income from it,
including from the sale of the t-shirts.  (Ex. 17 at 253:18-20).  As set forth above,
there are hundreds of images of Bigfoot available on the internet and on products
available for purchase that contain the features that Plaintiff claims are original to
him.  Plaintiff has taken no action to enforce his alleged copyright interests.
(Kneafsey Decl., ¶ 12; Ex. 22).

Furthermore, when asked if he signed a contract when he first sold the Statue,
he testified: "It is customary to have some sort of form when our work is sold. I do
not recall in this case. This was a number of years ago; so I -- I do not recall."  (Ex.
17 at 46:7-9).

When he was asked whether he sold "the intellectual property rights to the
statue," he responded "*I would need to see a document, but I do not recall that.
That doesn't sound like something I would do.*"  (Ex. 17 at 47:6-11).

Plaintiff failed to produce a copy of the contract pursuant to which he sold his
statue in this case.  (Kneafsey Decl., ¶ 13).

Based on the foregoing, there is a triable issue of fact as to whether Plaintiff
retained any copyright interest in his statue at all when he sold the statue in 2007.  If
he transferred his rights in the statue when he sold it, then he would lack standing to
file this action.

Plaintiff himself has admitted that he may well have transferred his copyright
interest (as one would expect) when he sold the statue in 2007.  This, coupled with
the fact that the Fabric Museum has made the statue available to the public as a
"photo op" and the fact that the Fabric Museum has sold t-shirts purportedly
depicting a silhouette of Plaintiff's statue, with no action by the Plaintiff, creates an
inference that Plaintiff did in fact sell any copyright interest that he had.  At a
minimum, there is a triable issue of fact on this issue.

Further, there is a triable issue of fact as to whether Plaintiff abandoned his copyright interest in the statue.  While "[a]bandonment of a copyright must be manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy," (*Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1051 (D. Ariz. 2011)), "what does or does not constitute abandonment appears to be a highly fact-specific inquiry." *Marya v. Warner/Chappell Music, Inc*. 131 F. Supp. 3d 975, 991-992 (C.D. Cal. 2015); *Melchizedek*, 792 F. Supp. 2d at 1051("Based on the record before the Court, there is a material issue of fact as to whether Plaintiff intended to abandon his copyright through an overt act or acts."); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 2017 U.S. Dist. LEXIS 22561, **8-9 (N.D. Cal. 2017) ("what does or does not constitute abandonment appears to be a highly fact-specific inquiry"); *Wyatt Tech. Corp. v. Malvern Instruments Incorporation,* 2009 U.S. Dist. LEXIS 66097, **39-40 (C.D. Cal. 2009) ("By stating that there were "no restrictions" on the material, the language effectively stated that the author had abandoned those  rights.").

Here, Plaintiff sold his statue which a trier of fact could find was an overt act sufficient demonstrate an intent to abandon his copyright interest in the statue.  In fact, he testified that "*I would need to see [the contract], but I do not recall . . . .*" (Ex. 17 at 47:6-11).  Moreover, the statue is now available at a museum where it is publicly available as a "photo op."  The museum sells tourist type t-shirts.  Plaintiff has acquiesced to the sale of these t-shirts and has not taken any action against any of the hundreds of similar images available for viewing on the internet and on products for sale.

A triable issue of fact exists as to whether Plaintiff has standing and whether he has abandoned any copyright interest he may have.

1
2

**5.      Innocent Infringement is a Defense to the Copyright Act's Remedies**

3   Although the "innocent intent of the defendant constitutes no defense to
4   liability," the innocent intent of the defendant "may, however, bear upon the
5   remedies available against such a defendant," including the remedies available
6   under 17 U.S.C. § 504(c)(2); *see* 4 Nimmer on Copyright ("Nimmer") § 13.08
7   (Matthew Bender rev. ed. 2011).  Further, "[w]hither the defendants' infringement
8   was innocent is a factual determination."  *L.A. News Serv. v. Reuters TV Int'l, Ltd.*,
9   149 F.3d 987, 995 (9th Cir. 1998).

10   Here, there is a factual issue as to the foundational issue as to the scope of
11   Plaintiff's alleged copyright interest in the silhouette, as well as whether any alleged
12   infringement was innocent.  (Gugliuzza Decl. at ¶¶ 4-6).

13
14
15

**6.      If The Court Does Not Grant Summary Judgment In Defendant's Favor, There is, at a Minimum, a Factual Dispute as to Whether Plaintiff Can State a Claim**

16   "[A] defense for failure to state a claim may be raised in any permissible
17   pleading." *Hernandez v. Balakian*,  2007 U.S. Dist. LEXIS 43680 (E.D.Cal. Jun. 1,
18   2007); *Brewer v. Salyer*, 2007 U.S. Dist. LEXIS 66379, at *3-4 (E.D. Cal. 2007)("
19   "Rule 12(h)(2) provides that the defense of failure to state a claim may be made in
20   any pleading permitted or ordered under Rule 7(a), which includes an answer. The
21   defense is therefore not legally insufficient . . . Plaintiff's motion is therefore denied
22   as to the First Affirmative Defense."  "); *see Robinson v. Adams*, 2009 U.S. Dist.
23   LEXIS 108383, at *2-3 (E.D. Cal. 2009).

24   For the reasons set forth above, there are factual disputes as to whether
25   Plaintiff can state a valid claim for copyright infringement.

26   **C.      Implied License and Misuse of Copyright Claims**

27   Defendant withdraws its implied license and misuse of copyright affirmative
28   defenses.

1

## III.   CONCLUSION

2

Based on the foregoing, Defendant respectfully requests that Plaintiff's

3 Motion for Partial Summary Judgment be Denied, and that Defendant's Motion for

4 Summary Judgment be granted.

5

6   DATED:  June 18, 2018           THE KNEAFSEY FIRM, INC.

7                                            */s/ Sean M. Kneafsey*

8                                   By _____
                                              Sean M. Kneafsey
9                                   Attorneys for Defendant and Counter-Claimant
                                    THE KETCHUM GROUP, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -